The opinion of the court was delivered by
Breaux, J.
The St. Louis National Bank, a creditor of the defendant, sued him on 7th March, 1890, for the sum of twelve hundred- and seventeen dollars and ninety-seven cents and interest. .
As a basis for a writ of attachment the plaintiff bank alleged that-the defendant had suspended payment' and was in failing circumstances ; that he continued from day to day to sell his goods for cash, and to collect amounts due him, to place it beyond the reach of his creditors; that in order to gain time and deceive his creditors he issued a circular to them, exaggerating the quantity and value of his assets, and asking for an extension within which to pay, well-knowing that it was impossible for him to pay with his visible assets,' and that he was aware that the delay would not be granted because he made his proposition conditional upon the unanimous acceptance-by all of his creditors, a remote contingency, creating the belief that his circular was a mere-subterfuge to stand off his creditors while he was turning his goods into cash in order to defraud-them.
■ The plaintiff further alleged that the defendant • had failed to all intents and purposes, and would have made a cession of his property if-he had intended'dealing fairly; that he had failed several' times and settled his liability at heafy discount.
*1336 In his answer the defendant claimed to have settled his indebtedness by giving a draft to the plaintiff in satisfaction of the draft the plaintiff held.
With reference to the attachment, he denied the truth of plaintiff’s allegations; he also denied his alleged insolvency, though admitting temporary embarrassment, and specially alleged that since January, 1890, he had been negotiating with his creditors for an extension of time, and had secured the consent of over three-fourths in number and amount, to such extension; he specially denied making use of such delay to defraud his creditors, or having made false or unfair statements to them, and averred that he had conducted his business in the usual manner, saving that he suspended payments temporarily while waiting the answer of his creditors to his application for extension.
He charges that the attachment was wanton, malicious, and without probable cause, and reconvenes for damages in the sum of thirty-nine thousand and thirty-seven dollars and forty-one cents.
Subsequently the defendant, Bloch, obtained a respite of one, two and three years.
His schedule of assets and liabilities, upon which he obtained the respite, was filed June 16, 1890.
The plaintiff, in the respite proceedings, required of the defendant, Bloch, the execution of a bond and security for its claim.
The bond having been executed and instalment matured, the plaintiff sued out a rule upon the defendant to show cause why the respite should not be set aside and annulled, because of the nonpayment of the bond.
In this answer, to this rule, the defendant denies his indebtedness and avers that the plaintiff bank owes him a large sum, for which he had instituted suit.
On his motion the two suits, the respite proceedings and the suit of the plaintiff bank, against him, were consolidated.
The case was tried by jury. They returned a verdict for the defendant for seven thousand dollars. The plaintiff appeals. It is in place to state that, preliminarily, before this court, the plaintiff bank complains of the form of the verdict and judgment and asks that the case be remanded for another trial for the reason that the verdict is not responsive to the pleadings, not having passed upon the merits. Plaintiff invokes the article of the Code of Practice in *1337 which it is laid down that the jury should pass, at one and the same time, upon the main and reconventional demands.
The jury has not in terms rejected plaintiff’s demand.
Either they rejected plaintiff’s demand entirely, or they compensated the two claims and rendered judgment for the balance they found due to the defendant.
This question was considered in Miller, Lyon & Oo. vs. Oeppel et al., 39 An. 882, and the court held that, being in possession of all the facts and evidence necessary to pronounce judgment in the case, it would proceed to render such judgment as should have been rendered in the court below, regardless of the defective verdict.
The same principle was laid down recently in State of Louisiana vs. Cannon, Sheriff, 44 An. 734.
The verdict of the jury expresses a balance due, and, from the conclusion reached, it was useless for them to pass upon the application to annul and set aside the respite.
Manifestly the jury found that there was no ground to annul and set it aside, the order of respite having determined that the plaintiff was not entitled to anything, and therefore without concern in the respite proceedings, not being, from their point of view, entitled to anything.
This conclusion brings us to the consideration of plaintiff’s claim; as it was never seriously disputed by the defendant, and is supported by the evidence, it must be pronounced due.
Without denying the indebtedness, the defendant urged that it had changed form and secured him some delay for payment.
This draft was drawn by the Freeman Wire and Iron Company, of St. Louis, upon defendant Bloch, and it was by him accepted.
At maturity it was sent to Opelousas for collection. The acceptor, the defendant contends, settled this indebtedness by giving another drain in payment in accordance with an agreement with the Freeman Wire and Iron Company.
This company had transferred the first and accepted draft to the plaintiff for valid consideration. No agreement of these parties — i. e., between Freeman Wire and Iron Company and the defendant, could affect their (plaintiffs’) interest, as they were the holders and owners in good faith, prior to maturity.
The draft had passed out of the hands of the payees, and was legally held by the plaintiffs.
*1338 THE DISSOLVED ATTACHMENT.
The plaintiffs contends that the facts sustain their writ of attachment. The defendant with much earnestness and emphasis denies the charges upon which the writ is based, and controverts plaintiffs’ inferences regarding certain business transactions of the defendant.
The balance of the evidence regarding the insolvency alleged support the conclusion that the defendant was not insolvent at the time that the attachment issued; his embarrassment as a debtor was not the less great, and rendered it impossible for him to meet his maturing obligations.
The attempted suspension of payment and the written notice addressed to each creditor informing him, a few weeks prior to the attachment, that short crops and other causes stated occasioned him to' sustain heavy losses in his sales of merchandise, his collections and in his purchases of rice, and that while he had ample means in property enumerated he was compelled, with great reluctance, to suspend payment for the present and ask indulgence, and the proposal to pay in three stated instalments if all his creditors would agree, was not, of itself, a fraud upon his creditors. It was not binding upon the creditors, and was merely a request for delay.
It is probable that it seriously affected his credit and proved highly damaging to his business, but it was not a ground for attachment; unconnected with other acts showing a design to enrich himself at the 'expense of his creditors, it does not give rise-to the inference that a wrong was intended justifying a writ of attachment. There is no evidence showing that the defendant was at any time prior to the attachment, and at the date of the notice to the creditors, selling his goods at or below cost.
We will not dwell upon the acts of the embarrassed debtor, who iri his nervous anxiety to escape from ruin' and want, Commits indiscretion and suffers losses cool reflection will avoid.
If these acts preceding "the attachment stand alone, unconnected with any subsequent agreement or attempts to take undue advantage of creditors, they do not of themselves support an attachment. They will only have contributed to defendant’s loss and damage without, so far as the evidence discloses, giving good ground for an attachment'. •
Our attention has been arrested by* the report' of a Committee; *1339 bearing date March 22, 1890, recommending a settlement with the defendant at fifty cents on the dollar, cash.
This of itself has no special significance. Creditors generously abandon a part of their claims in order that the unfortunate debtor may free himself from a part of his indebtedness and be enabled to pay the remainder and uphold a place among merchants.
It is urged that there were favored creditors who were paid in full, though they had signed an agreement to receive only half in satisfaction of their claims, while others less fortunate received only fifty cents on the dollar, ostensibly the proposition to all, but from the effects of which the favored were excluded sub umbra, for the bene,- ■ fit of their influence in carrying out the compromise.
The determination of the issues on this point has been attended with some difficulty, it being established that such payments were made and color thereby given for the charge.
Our examination convinces us that the balance of the evidence is in favor of the position that there was no downright unfair dealing. ,
We have already seen that the defendant made an application for an extension of time prior to the attachment. At a meeting of his . creditors held after the attachment had been made to consider his . application he explained the condition of his business, and gave an ■’ account of his assets and liabilities. He represented himself as being solvent. His statements at the meeting are commented upon by the witnesses as having been fair and truthful.
A committee of creditors appointed by the creditors at a subsequent meeting made a report, and advised a compromise at fifty cents on the dollar in lieu of an extension. This recommendation was favorably received. For reasons not fully explained this compromise was not carried out, and the debtor resorted to other measures to settle his financial difficulties. He applied to the courts and obtained a respite. The records do not disclose that the debtor took any part or made any suggestion to influence the creditors. They, through their committee, made the offer, which was, it seems, accepted, but for some reasons, of which no one at the , time com- , plained, it was abandoned.
Subsequently the debtor, owing doubtless to the respite and the unsettled condition of his affairs, succeeded in. paying a number of claims at a discount. The proof is that these payments were made, without reference to the agreement entered into at the meeting of *1340 creditors; it appears that many creditors preferred the cash, while others trusted to the ultimate ability of the defendant to pay the whole amount of their claims.
Beyond the fact that certain creditors were paid less than the face value of their claims, there is no evidence that advantage was taken. In the absence of testimony, we will not assume that these creditors were controlled by improper influences and representations in the face of the positive uneontradicted declaration of a number of witnesses to the contrary.
The verdict of the jury and the judgment of the court dissolving the attachment were, therefore, correctly rendered and will remain undisturbed.
DAMAGES.
The reconventional demand presents serious grounds for determination. The defendant has filed a large claim for damages, which met the jury’s favorable consideration, to an amount to which we can not give our approval.
We must consider, in determining the question of damages, that the defendant announced to his creditors that he had suspended payment, and at the same time continued to sell his goods and realize from his sales in business. These acts are entirely unusual and extraordinarily exceptional.
He applied for an extension of time to pay.
This was followed by meetings, at which it was determined to accept fifty cents on the dollar on his indebtedness.
Respite proceedings were resorted to and a respite obtained on an order of court.
In defence of other suits instituted about the same time, in which attachments were levied, these large claims for damages were abandoned for very limited consideration.
In one of these cases plaintiff’s claim was small — some two hundred and fifty dollars.
The defendant in his reconventional demand prayed for the damages he claims in this suit. Subsequently a compromise was effected, in which he abandoned his claim for damages on plaintiffs’ receipt for the amount of his claim.
These large claims for damages are based principally on defendants alleged loss of credit and confidence, occasioned by plaintiff’s-attachment proceedings.
*1341 We do not feel certain that they are the cause or that they materially contributed to defendant’s loss of credit and business.
His own acts seriously affected his business to a degree rendering it impossible to find damages to his credit and standing from other causes. We must eliminate from the demand in reconvention all claims based on alleged loss of credit or loss of business.
They are hypothetical at best and not the immediate consequence of the attachment. We do not trace them with sufficient certainty to ground a judgment.
Assessing only actual damages arising directly from the attachment, we think that the defendant has a right to counsel fee for dissolving the attachment. A practising member of the bar testified that two hundred and fifty dollars would be a fair compensation. No good reason suggests itself to disregard this estimate.
The defendant claims for loss and deterioration in his goods, while under seizure, the sum of six hundred and twenty-three dollars and four cents. This item is supported by testimony, and he is justly entitled to the amount.
This ends the list of damages allowed. We can not reconcile ourselves to the assessment of a larger amount for annoyances, trouble, worry, mortification, injury to feelings, for loss in sale of goods, and profits. They are problematical and unusually uncertain in this case as elements of damages chargeable to plaintiff.
With reference to the rule to set aside the respite, consolidated with the principal case, the changes that have taken place in this protracted litigation require that the question be not finally decided at this time and in the suit at bar.
It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed; and it is further ordered, adjudged and decreed that plaintiff recover judgment against the defendant for the sum of twelve hundred and seventeen dollars and ninety-seven cents, with eight per cent per annum from the 24th of February, 1890, until paid.
It is further ordered, adjudged and decreed that defendant have judgment on his reconventional demand against the plaintiff in the sum of eight hundred and seventy-three dollars and four cents, with legal interest from date of this judgment.
The defendant to pay costs.
It is further ordered, adjudged and decreed that the writ of at *1342 tachment be dissolved and set aside, the costs of attachment and of seizure under the attachment to be paid by plaintiff.
It is further ordered, adjudged and decreed that the rule upon the defendant to show cause why the respite of one, two and three years granted by his creditors should not be set aside and annulled because of non-payment of the bond be dismissed as in case of non-suit at cost of plaintiff in rule.
The defendant and appellee to pay the costs of appeal.